UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN CASSADAY,

    Plaintiffs,

v.

UNITED STATES DISTRICT COURT,
WESTERN DISTRICT OF MICHIGAN, et. al.,

    Defendants.
_____/

Case No. 1:25-cv-13076

Hon. Thomas L. Ludington
United States District Judge

**OPINION AND ORDER DISMISSING PLAINTIFF'S COMPLAINT AND WARNING OF SANCTIONS**

Plaintiff Kevin Cassaday, proceeding *pro se*, filed a lawsuit against Defendants United States District Court for the Western District of Michigan, the Michigan Court of Claims, Michigan Court of Appeals, and the Michigan Supreme Court, and several judges and clerks of court. Plaintiff applied to proceed *in forma pauperis* (IFP), which the Court granted. Because Plaintiff proceeds IFP, the Court must determine whether he fails to state a claim subject to screening under 28 U.S.C. § 1915(e)(2). The Court has determined that it lacks jurisdiction to assess Plaintiff's Complaint because all Defendants are entitled to sovereign immunity. Thus, his Complaint will be dismissed without prejudice.

I.

On September 26, 2025, Plaintiff filed a Complaint against four courts each in their official capacity: (1) the United States District Court for the Western District of Michigan (WDMI), (2) the Michigan Court of Claims (MI CoC), (3) the Michigan Court of Appeals (MI CoA), and (4) the Michigan Supreme Court (MSC). ECF No. 1 at PageID.2–3. In addition, Plaintiff appears to sue current WDMI Chief Judge Hala Jarbou and former WDMI Chief Judge James Jonker, MI

CoC and MI CoA Chief Clerk of Court Jerome W. Zimmer, Jr., and former MSC Clerk of Court Larry Royster[1]—each in their official capacity.

The facts in the Complaint are slim and unclear. Plaintiff alleges that he went to the MI CoA in 2020, and "filed an appeal against his former employer showing the courts of malfeasance by court officials." *Id.* at PageID.4. But he does not explain the details of this appeal or what occurred in the previously alleged case against his former employer. Moreover, Plaintiff states that in 2021, he filed cases in the MI CoC against numerous "[s]tate employees & agencies" claiming that he was "being actively retaliated against by people he filed suit against." *Id.* He alleges that he petitioned the MI CoC "to stop such abuse." *Id.*

He further alleges that at some point, his access to Michigan state courts "was blocked," so he began filing suits within the WDMI. *Id.* He alleges that again he was barred from filing cases "after filing [twenty-four] cases, &[sic] [nineteen] cases did not get docketed." *Id.*[2] He argues that the courts offered him "no protections" while he was "under active retaliation." *Id.*

He also alleges that the Michigan State Police, Federal Bureau of Investigation, and other law enforcement "ganged up" on him by means of intimidation through "attempt[s] to incarcerate [him] & attempt[s] to martyr him & obstruct justice & torment him for coming forward." *Id.* Notably, though, no law enforcement agency is a party to this lawsuit.

---

[1] Defendant Royster was replaced by Elizabeth Kingston-Miller as the MSC Clerk of Court in 2025. *Supreme Court Names First Women to Two Key Positions*, ONE COURT OF J., (June 6, 2025) https://www.courts.michigan.gov/news-releases/2025/supreme-court-names-first-women-to-two-key-positions/.

[2] Indeed, Plaintiff was party to over forty cases in the WDMI. *See, e.g.*, *Cassaday, Plaintiff, v. United States Government*, No. 1:21-CV-708, 2021 WL 3928669 (W.D. Mich. Sept. 2, 2021) (explaining that this lawsuit was "the first of seventeen filed by Plaintiff on August 19, 2021. None of the lawsuits allege sufficient facts to state a claim for which any court could grant relief."); *Cassaday v. Trump*, 1:21-cv-00710-PLM-PJG (2021); *Cassaday v. Great Lakes Center of Rheumatology*, 1:21-cv-00711-GJQ-PJG (2021); *Cassaday v. Verizon Media*, 1:21-cv-00716-GJQ-PJG (2021).

Plaintiff's claims are equally difficult to decipher. Seemingly, he asserts three official-capacity claims against all three state courts and their respective clerks of court, including (1) a general First Amendment claim, (2) a "[r]ight to have access to the courts" claim, and (3) a claim under 42 U.S.C. § 1981, alleging that he "is to have the same rights as 'whites.'" *Id.* at PageID.3. Plaintiff also asserts three official-capacity claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against the WDMI and Chief Judge Jarbou and Judge Jonker. Notably, Plaintiff's First Amendment and 42 U.S.C. 1981 claims appear the same, but he has added a claim under 18 U.S.C. 1512(d)(4). *Id.* Plaintiff seeks monetary damages for thirty-seven trillion dollars and to have "truth told to the courts['] actual vindictive conduct." *Id.* at PageID.5.

The same day he sued Defendants, Plaintiff applied to proceed *in forma pauperis* (IFP). ECF No. 2. Plaintiff's IFP Application was granted on October 17, 2025. ECF No. 4.

## II.

Because he proceeds IFP, Plaintiffs' Complaint is subject to screening. *See* 28 U.S.C. § 1915. 28 U.S.C. § 1915(e)(2) provides that courts should dismiss an IFP complaint before service if the complaint is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.

A complaint is frivolous if it lacks any arguable basis in law or fact. *See Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). And a complaint fails to state a claim if, even when construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), it does not include "a short and plain statement of the claim" showing entitlement to relief and "a demand for the relief sought[.]" *See* FED. R. CIV. P. 8. Bare "labels and conclusions" or "naked assertions" are insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 679 (2007). Instead, the complaint must include

sufficient factual allegations to push its claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III.

### A.

Turn to Plaintiff's *Bivens* claims against the WDMI and Chief Judge Jarbou and Judge Jonker in their official capacity. All claims are barred by the doctrine of sovereign immunity.

Sovereign immunity "provides that the United States is immune from suit unless Congress has expressly waived the defense." *Smith v. Scalia*, 44 F. Supp. 3d 28, 38 (D.D.C. 2014); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411–12 (1821). If sovereign immunity applies, courts lack jurisdiction over the lawsuit. *See, e.g., FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "A lawsuit against a government official in his official capacity is tantamount to a suit against 'an entity of which an officer is an agent.'" *Smith*, 44 F. Supp. 3d at 38 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Thus, "the sovereign immunity doctrine applies equally to the government itself and to any federal official sued in his or her official capacity." *Id.* Sovereign immunity also extends to official capacity suits against federal courts and their judges. *Calton v. United States Ct. of Appeals for Fifth Cir.*, No. CV 22-3372, 2023 WL 2386850, at *3 (E.D. La. Mar. 7, 2023) (citing *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1245 (10th Cir. 2007); *Smith*, 44 F. Supp. 3d at 38 ("Moreover, to the extent that Smith has sued the judges in their official capacity, these defendants are part of the United States government for the purposes of sovereign immunity.").

But Congress may consent to suit against the United States by enacting an express, unequivocal waiver of sovereign immunity in a statute. *Id.* (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). Still, a plaintiff bears the burden of establishing that sovereign immunity

has been waived or abrogated. *See, e.g.*, *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003); *James v. United States*, 970 F.2d 750, 753 (10th Cir. 1992); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

Here, Plaintiff sued two federal judges and a Federal District Court—both of which are entitled to sovereign immunity. *See Smith,* 44 F. Supp. 3d at 38*; Calton*, 2023 WL 2386850, at *3. He has not alleged that sovereign immunity has been either waived or abrogated. *See Tri-State Hosp. Supply Corp.*, 341 F.3d at 575. And more importantly, the Sixth Circuit has explained that Congress has not waived sovereign immunity for *Bivens* claims. *Nuclear Transp. & Storage, Inc. v. United States*, 890 F.2d 1348, 1352 (6th Cir. 1989). So this Court lacks jurisdiction over Plaintiff's claims against Chief Judge Jarbou, Judge Yonker, and the WDMI.

**B.**

Next, turn to Plaintiff's official-capacity claims against the state court Defendants. These Defendants also have immunity.

States are also entitled to sovereign immunity. *See, e.g., Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005); *Alden v. Maine*, 527 U.S. 706, 713 (1999); *Monaco v. Mississippi*, 292 U.S. 313, 322–23 (1934); *Hans v. Louisiana*, 134 U.S. 1, 13 (1890). For States, "that immunity flows from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments to the United States Constitution." *Ernst*, 427 F.3d at 358; *see also Alden*, 527 U.S. at 713. "The States' immunity from suits in federal court applies to claims against a State by citizens of the same State as well as to claims against a State by citizens of another State." *Ernst*, 427 F.3d at 358. "The immunity also applies to actions against state officials sued in their official capacity for money damages." *Id.* The MSC and the lower state courts are arms of the state that are entitled to immunity. *Pucci v. Michigan Supreme Ct.*, 601 F. Supp. 2d 886, 897 (E.D. Mich. 2009) ("The Michigan Supreme Court is an arm of the State, and therefore it is entitled to sovereign immunity."); *Dubuc v.*

*Michigan Bd. of L. Examiners*, 342 F.3d 610, 615–16 (6th Cir. 2003); *see also Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 762–63 (6th Cir. 2010) (citing Mich. Const. art. VI, § 1) (stating all of Michigan's courts, including those trial-level courts funded by local funding units, are part of one, unified judicial branch of the state).

But there are a host of exceptions to a State's sovereign immunity:

> A State may elect to waive that immunity through legislation or through its conduct in litigation. The immunity does not attach if the lawsuit is not against the State or an arm of the State. The immunity does not extend to counties and similar municipal corporations. The immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law. The immunity may be abrogated by Congress when exercising its enforcement authority under the Fourteenth Amendment, and perhaps other enforcement clauses, such as the Fifteenth Amendment. The immunity does not apply when the Federal Government brings the lawsuit. And the immunity does not apply when another State brings the lawsuit on behalf of its own interests rather than those of specific citizens.

*Ernst*, 427 F.3d at 358–59 (internal citations and quotations omitted).

Here, the three state courts that Plaintiff sues—the MI CoA, MI CoC, and MSC—are entitled to sovereign immunity as arms of the state. *See Dubuc*, 342 F.3d at 615–16; *see also Pucci*, 628 F.3d at 762–63. And because Plaintiff sues the two clerks of court in their official capacities for money damages and no exception applies, they, too, are entitled to sovereign immunity. *Ernst*, 427 F.3d at 358. So this Court also lacks jurisdiction over Plaintiff's claims against the state courts and their clerks of court.

In sum, this Court lacks jurisdiction over all of Plaintiff's claims. Indeed, all Defendants are entitled to sovereign immunity. Thus, Plaintiff's Complaint, ECF No. 1, will be dismissed.

## IV.

This Court must make one final observation. This is not Plaintiff's first filing that has been summarily dismissed. In addition to this case, he has three others pending here: *Cassaday v. State of Michigan*, No. 1:25-cv-12576; *Cassaday v. United States District Court for the Western District*

*of Michigan*, No. 1:25-cv-13076; and *Cassaday v. Trump*, No. 1:25-cv-13074. Contemporaneously with this case, *Cassaday v. Trump*, No. 1:25-cv-13075 and *Cassaday v. Trump*, No. 1:25-cv-13074, will be summarily dismissed.

Nor are these isolated incidents. Plaintiff has filed and had dismissed numerous other actions across this District for frivolousness, failure to state a claim, immunity, or procedural default. *See, e.g.*, *Cassaday v. State of Michigan*, No. 1:25-cv-10419; *Cassaday v. Federal Defender's Office*, No. 1:22-cv-10801; *Cassaday v. Verizon Media Inc.*, No. 1:25-cv-10276; *Cassaday v. Dow Chemical Co.*, No. 1:22-cv-11555; *Cassaday v. FBI*, No. 4:22-cv-10909 (E.D. Mich.). Notably, several of those actions raise similar claims to the ones Plaintiff brought here.

Magistrate Judge Patricia T. Morris has already warned Plaintiff that this conduct cannot be tolerated; time spent on these cases means that much less time can be spent addressing other litigants' cases that seek relief from this Court. *Cassaday v. Verizon Media Inc.*, No. 1:25-CV-10276, 2025 WL 763571, at *2 (E.D. Mich. Feb. 10, 2025), *R&R adopted*, No. 1:25-CV-10276, 2025 WL 636320 (E.D. Mich. Feb. 27, 2025). Judge Morris detailed his extensive history of vexatious and meritless filings—17 in a single month in the Western District of Michigan—and his subsequent threats against federal judges after dismissal. *Id.* (citing *See United States v. Cassaday*, No. 1:23-cr-00043 (W.D. Mich.) (threatening to "get [his] guns" and "have a party" with a judge). And Judge Morris cautioned that further vexatious filings could result in sanctions, including pre-filing restrictions. *Id.*

Stemming from Civil Rule 11, district courts possess the authority to sanction bad-faith conduct and to enjoin vexatious litigants from further abuse. *See United States ex rel. Odish*, 843 F. App'x 748, 750 (6th Cir. 2021) (per curiam); *see also Gray v. United States*, No. 23-3723, 2025 WL 40818, at *2 (6th Cir. Jan. 3, 2025) ("A district court has discretion to impose prefiling

restrictions on a party with a track record of repetitive or vexatious litigation."); *Clemons v. DeWine*, No. 19-3033, 2019 WL 7567197, at *3 (6th Cir. May 1, 2019); *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998). While no sanction issues today, the record leaves little doubt that Plaintiff's filings are vexatious. He is now expressly warned: continued submission of frivolous or duplicative lawsuits will result in an order barring further filings without prior leave of court.

V.

Accordingly, Plaintiff's Complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE.**

Further, it is **ORDERED** that Plaintiff's ability to proceed *in forma pauperis* on appeal is **DENIED.**

**This is a final order and closes this case.**

Dated: October 24, 2025                               s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge